UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

IN RE:                                                  Chapter 11 Cases

TP BRANDS WORLDWIDE INC.[1]                              Case No. 8:25-bk-08424-CED
                                                        Lead Case

                                                        *Jointly Administered with*
TP BRANDS INTERNATIONAL INC.                            Case No. 8:25-bk-08425-CED
PREMFLOOR, INC.,                                        Case No. 8:25-bk-08427-CED

          Debtors.

_____/

## FIRST AMENDED JOINT CHAPTER 11 PLAN FOR
## TP BRANDS WORLDWIDE INC. AND ITS DEBTOR AFFILIATES

> **THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED OR PRELIMINARILY APPROVED BY THE BANKRUPTCY COURT. THIS PLAN HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

Dated: March 13, 2026.       BERGER SINGERMAN LLP
                             *Counsel for the Debtors and Debtors-in-Possession*
                             101 E. Kennedy Boulevard, Suite 1165
                             Tampa, FL 33602
                             Tel. (813) 498-3400
                             Fax (813) 527-3705

                             By: */s/ Edward J. Peterson*
                                   Edward J. Peterson
                                   Florida Bar No. 0014612
                                   epeterson@bergersingerman.com
                                   Clay B. Roberts
                                   Florida Bar No. 116058
                                   croberts@bergersingerman.com

---

[1] The address of the Debtors is 2021 51st Avenue East, Unit 109, Palmetto, FL 34221.  The last four digits of the Debtors' federal tax identification numbers are: TP Brands Worldwide Inc. (5200); TP Brands International Inc. (4195); and Premfloor, Inc. (6672).

35584909-21

Pursuant to section 1121(a) of the Bankruptcy Code, TP Brands Worldwide Inc., TP Brands International Inc., and Premfloor, Inc., each a "Debtor" and, collectively, the "Debtors," file this Plan of Reorganization (hereafter referred to as the "Plan").

Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, business, assets, results of operations, historical financial information, and projections, as well as a summary and description of the Plan and certain related matters. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

**All holders of Claims entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entireties before voting to accept or reject the Plan.**

### ARTICLE I - DEFINED TERMS AND RULES OF INTERPRETATION

#### A.    Defined Terms

Capitalized terms in this Plan shall have the meanings ascribed to them as defined herein or in the approved Disclosure Statement supplied in conjunction with this Plan.

As used in this Plan, the following terms shall have the meanings specified below, unless the context requires otherwise:

"Administrative Expense Claim" means a Claim entitled to priority for costs and expenses of administration of the Debtors' Estates under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the applicable Estate and operating the businesses of the Debtors; (b) Allowed Professional Fee Claims in the applicable Chapter 11 Cases; and (c) all fees and charges assessed against the Debtors' Estates under chapter 11 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.

"Administrative Expense Claims Bar Date" means the deadline for filing requests for payment of Administrative Expense Claims (other than Professional Fee Claims, which shall be paid in accordance with the Plan).

"Affiliate" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

"Allowed" means with respect to a Claim, except as otherwise provided herein: (a) a Claim in a liquidated amount as to which no objection has been Filed prior to or on the applicable objection deadline and that is either evidenced by a timely Filed Proof of Claim or that is not required to be evidenced by a Proof of Claim under the Plan, the Bankruptcy Code, or a Final Order; (b) a Claim that is scheduled by the Debtors on their Schedules as neither disputed, contingent, nor unliquidated, and for which no Proof of Claim has been Filed in an unliquidated or different amount; or (c) a Claim that is deemed "Allowed" (i) pursuant to the Plan, (ii) in any stipulation approved by the Bankruptcy Court, (iii) pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan, or (iv) by Final Order (including any Claim to which the Debtors had objected or which the Bankruptcy Court had allowed prior to such Final Order); provided, that with respect to a Claim described in clauses

2

(a) through (c) above, such Claim shall be considered Allowed only if and to the extent no objection to the allowance of such Claim has been Filed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or if such an objection had been Filed, it was overruled and such Claim was Allowed by a Final Order; provided, further, that no Claim of any Person subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Person pays in full the amount that it owes to the applicable Debtor, Reorganized Debtors.

"Avoidance Actions" means any and all actual or potential avoidance, recovery, subordination, or other Claims, Causes of Action, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including Claims, Causes of Action, or remedies under sections 502, 510, 542, 544, 545, 547 through and including 553, and 724(a) of the Bankruptcy Code or under similar local, state, federal, or foreign statutes and common law.

"Ballot" means the form or forms that will be distributed to holders of Claims and Interests, together with the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code, as applicable to these Chapter 11 Cases and in connection with the Debtors' solicitation of acceptances of the Plan.

"Bankruptcy Code" means Title 11 of the United States Code as in effect on the Confirmation Date.

"Bankruptcy Court" means the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, having jurisdiction over these Chapter 11 Cases.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of title 28 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, each as it may exist on any relevant date to the extent applicable to the Chapter 11 Cases.

"Bar Date" means January 19, 2026, the date established by the Bankruptcy Court as the last day upon which Claim(s) were to be filed.

"Business Day" means any day other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a).

"Cash" means legal tender of the United States of America and cash equivalents, including bank deposits, checks, and other equivalent items.

"Causes of Action"  means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of setoff, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and crossclaims (including, without limitation, all claims and causes of action that constitute property of the estate under Section 541 of the Bankruptcy Code,

3

35584909-21

all claims and any avoidance, preference, recovery, subordination or other actions against Creditors, insiders and/or any other entities under the Bankruptcy Code, and any and all state and common law claims for breach of fiduciary duty against the Debtors' directors and officers solely to the extent such directors and officers served in such capacity prior to the Effective Date) against any Person or Entity, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Effective Date, including, but not limited to, the Avoidance Actions.

"Chapter 11 Case(s)" means, when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and when used with reference to all of the Debtors, the jointly administered cases pending for the Debtors under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

"Claim(s)"  any right to payment from the Debtors arising on or before the Confirmation Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"Class" means a category of Claims or Interests established for the purposes of the Plan pursuant to section 1122(a) of the Bankruptcy Code.

"Confirmation" means entry of a Confirmation Order on the docket of the Chapter 11 Cases of the Debtors within the meaning of Bankruptcy Rules 5003 and 9021.

"Confirmation Date" means a date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases of the Debtors.

"Confirmation Hearing" means a hearing before the Bankruptcy Court at which the Debtors seek entry of the Confirmation Order and final approval of the Disclosure Statement.

"Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, including all exhibits, appendices, supplements and related documents.

"Consummation" means the occurrence of the Plan Effective Date.

"Control" (including, with its correlative meanings, "controlling," "controlled by," and "under common control with") means, with respect to any Person, the possession, directly or indirectly, of the power to direct the management and policies of such Person whether through the ownership of voting securities, by contract or otherwise.

"Cure Amount" means the amount, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties to such Executory Contract or Unexpired Lease) that is to be

4

35584909-21

assumed by the Debtors (and, in the event of a 363 Asset Sale, potentially assigned to the Purchaser(s)) pursuant to sections 365 or 1123 of the Bankruptcy Code).

"Debtor" or "Debtors" has the meaning set forth in the Introduction.

"Disallowed" means, with respect to a Claim, a Claim (or portion thereof) that has been denied, dismissed, or overruled pursuant to the Plan or a Final Order.

"Disclosure Statement" means the disclosure statement for the Plan, including all exhibits and schedules thereto.

"Disputed Claim"  any Claim in these Chapter 11 Cases (i) that is scheduled by the Debtors as disputed, contingent or unliquidated and for which no proof of claim has been filed; or (ii) proof of which has been filed with the Bankruptcy Court, and an objection to the allowance thereof, in whole or in part, has been or is interposed prior to the final date provided under this Plan for the filing of such objections (or thereafter pursuant to an order of the Bankruptcy Court) and which objection has not been settled or determined by a Final Order; or (iii) not scheduled as disputed, contingent or unliquidated, or proof of which was not required to be filed by the Bar Date, but to which the Debtors or any Creditor has interposed an objection by such date as required by the Plan, the Bankruptcy Code or order of the Court.

"Distribution" means any distribution by the Debtors to a holder of an Allowed Claim.

"District Court Action" means the civil action filed by PNC against the Debtors and Winter pending in the United States District Court for the Middle District of Florida (Tampa Division), Case No. 25-cv-02080-WFJ-CPT.

"Effective Date" shall be the fifteenth (15) day following entry of the Confirmation Order.

"Estate" or "Estates" means the estate(s) of a Debtor(s) created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Chapter 11 Case.

"Executory Contract" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

"Equity Interests" means the ownership interests in the Debtors held by Winter, which constitute one hundred percent (100%) of the equity interests in the Debtors.

"File," "Filed," or "Filing" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court (including requests for allowance of an Administrative Expense Claim) or, with respect to the filing of a Proof of Claim, the Claims, Noticing, and Solicitation Agent.

"Final Order" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, vacated, stayed, modified, or amended, and as to which the time to appeal, seek leave to appeal, or seek certiorari has expired and no appeal or petition for certiorari or motion for leave to

35584909-21

appeal has been timely taken, or as to which any appeal that has been taken or any petition for certiorari or motion for leave to appeal that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari or leave to appeal could be sought or the new trial, reargument, leave to appeal, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice, provided, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

"General Unsecured Claim" means, collectively, any Claim against one or more of the Debtors that is not a/an Administrative Expense Claim, Priority Tax Claim or Other Priority Claim, Professional Fee Claim, Intercompany Claim, or Secured Claim. For the avoidance of doubt, Rejection Claims are General Unsecured Claims and any deficiency Claim of a holder of Secured Claim are General Unsecured Claims. To the extent applicable, the limitations imposed by section 502 of the Bankruptcy Code shall apply to the relevant General Unsecured Claim, including subsection 502(b)(6) and subsection 502(b)(7) thereof.

"Guaranty Agreements" means the Commercial Guaranty executed by Winter in favor of PNC dated January 12, 2021, and the Commercial Guaranty executed by Winter in favor of PNC dated June 30, 2021.

"HW" means HW Distribution, LLC.

"Impaired" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"Intercompany Claim" means any Claim against a Debtor held by another Debtor.

"Insider" shall have the meaning as defined in 11 U.S.C. Section 101(31).

"Interest" means a membership/equity interest in the Debtors.

"Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

"License Agreement" means that certain Intellectual Property License Agreement dated August 13, 2025, by and between TP Brands International, Inc. and HW.

"Net Profit" means the Debtors' net cash generated after payment of operating expenses, debt service, and taxes.

"Petition Date" means November 10, 2025, the date upon which the Debtors filed their voluntary petitions under Chapter 11 of the Bankruptcy Code.

35584909-21

"Plan" means this joint plan of reorganization, as it pertains to the Debtors, including any supplements and exhibits hereto, as it and they may be altered, amended, modified, or supplemented from time to time in accordance with their terms.

"PNC" means PNC Bank, N.A.

"Priority Claims" means any Claim, other than a Secured Claim or a General Unsecured Claim, which specifically arises under section 507(a) of the Bankruptcy Code.

"Professional" means any Person (a) employed in these Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 329, 330 and 331 of the Bankruptcy Code or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

"Professional Compensation Claim" means a claim of a Professional retained in these Chapter 11 Cases by the Debtors pursuant to a Final Order in accordance with sections 327 of the Bankruptcy Code, for compensation or reimbursement of actual and necessary costs and expenses relating to services incurred after the Petition Date and prior to and including the Effective Date.

"Property" has the meaning ascribed to the term "property of the estate" within the section 541 of the Bankruptcy Code.

"Pro Rata" with respect to an Allowed Claim in a given class, that same proportion that the Allowed Claim bears to the aggregate of all Allowed Claims in such class.

"Proof of Claim" means a written proof of Claim Filed against a Debtor in the Chapter 11 Cases.

"Reorganized Debtors" means the Debtors, as reorganized as of the Effective Date in accordance with the Plan, and their successors.

"Secured Claim" means a Claim (a) secured by a Lien on property in which any of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Final Order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Debtor's Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan, or separate order of the Bankruptcy Court, as a Secured Claim.

"Settlement Term Sheet" means that certain Mediated Settlement Term Sheet dated January 7, 2026 by and between PNC, the Debtors, and Winter.

"Unsecured Annual Payments" mean the Debtors' payment to Allowed Unsecured Creditors of their pro rata share of payments over a period of five years. In year 1, the payment shall be $20,000. In year 2, the payment shall be $30,000. In year 3, the payment shall be $40,000.

7

35584909-21

In year 4, the payment shall be |$50,000.  In year 5, the payment shall be $60,000. Such payments will be made on or before thirty (30) days after the end of each year following the Effective Date.

"U.S. Trustee" means the Office of the United States Trustee for the Middle District of Florida.

"Winter" means Thomas J. Winter.

The words "herein," "hereof" and "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular articles, sections, subsections or clauses contained in this Plan.  Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter.

## B.      Rules of Interpretation

All references herein to "this Plan" shall be construed, where applicable, to include references to this document its exhibits, appendices, schedules, and annexes, if any (and any amendments thereto made in accordance with the Bankruptcy Code and the Bankruptcy Rules). Whenever from the context it appears appropriate, pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular paragraph, subparagraph, or clause contained in this Plan. The words "include" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize, or limit the generality of the class within which such things are included. The captions and headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Any term used in this Plan that is not defined in this Plan, or in the approved Disclosure Statement, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules (with the Bankruptcy Code controlling in the case of a conflict or ambiguity).  Without limiting the preceding sentence, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to this Plan, unless superseded herein. In computing any period of time prescribed or allowed by this Plan, the provisions of Rule 9006(a) shall apply.  Unless the context indicates otherwise, all references to "Section" and "Article" shall refer to Sections and Articles, respectively, under this Plan. To the extent that the Disclosure Statement is inconsistent with any provisions contained in this Plan, the provisions in this Plan shall control. All Exhibits to this Plan are incorporated into and are a part of this Plan as if set forth in full herein, regardless of when filed.

## C.      Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Subject to the

35584909-21

requirements of any Definitive Document, any action to be taken on the Plan Effective Date may be taken on or as soon as reasonably practicable after the Plan Effective Date.

### D.      Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Florida, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided, however, that corporate or limited liability company governance matters relating to the Debtors or the Reorganized Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation of the applicable Debtor or the Reorganized Debtors, as applicable

## ARTICLE II - UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims have not been classified against the Debtors.

### A.      Administrative Expense Claims

Requests for payment of Administrative Expense Claims (except for Professional Fee Claims) must be Filed and served no later than the applicable Administrative Expense Claims Bar Date pursuant to the procedures specified in the Confirmation Order. Holders of Administrative Expense Claims that are required to File and serve a request for payment of such Claims that fail to do so shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtors, the Reorganized Debtors, as applicable, or their respective property, and such Administrative Expense Claims shall be deemed discharged as of the Plan Effective Date without the need for any objection or any notice to any Person or an order of the Bankruptcy Court.

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a less favorable treatment, to the extent an Allowed Administrative Expense Claim has not been paid in full or otherwise satisfied during the Chapter 11 Cases, each holder of an Allowed Administrative Expense Claim (other than Professional Fee Claims) shall receive from the Debtors, in full and final satisfaction of its Allowed Administrative Expense Claim, payment in full in Cash in accordance with the following: (1) if such Administrative Expense Claim is Allowed on or prior to the Plan Effective Date, on the Plan Effective Date; (2) if such Administrative Expense Claim is not Allowed as of the Plan Effective Date, no later than thirty (30) days after the date on which such Administrative Expense Claim is Allowed; (3) if such Allowed Administrative Expense Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Expense Claim; or (4) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

35584909-21

### B. Professional Fee Claims

#### 1. Payment of Professional Fee Claims

The Bankruptcy Court shall determine the Allowed amounts of all Professional Fee Claims in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, Local Rules, and prior Bankruptcy Court orders.

#### 2. Post-Confirmation/Pre-Effective Date

From and after the Confirmation Date until the Effective Date, the Debtors, without the necessity for any approval by the Bankruptcy Court, shall pay the reasonable fees and necessary and documented expenses of the Professionals during such period.

#### 3. Post-Effective Date Fees and Expenses

Upon the Plan Effective Date, any requirement that the Reorganized Debtors' Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention for services rendered after such date shall terminate, and the Reorganized Debtors may employ any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

### C. Priority Tax Claims

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, the Allowed Priority Tax Claims, each holder of an Allowed Priority Tax Claim shall receive treatment consistent with section 1129(a)(9) of the Bankruptcy Code by the applicable Debtor against which such Allowed Priority Tax Claims are validly asserted.

## ARTICLE III - CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A. Classification of Claims and Interests

The Classes of Claims and Interests listed below classify Claims and Interests for all purposes, including voting on, and distributions pursuant to, the Plan in accordance with sections 1122 and 1123(a) of the Bankruptcy Code. The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that (i) the Claim or Interest is an Allowed Claim or Interest and qualifies within the description of that Class and it shall be deemed classified in a different Class to the extent that it qualifies within the description of such different Class and (ii) such Allowed Claim or Allowed Interest has not been satisfied, released, or otherwise settled prior to the Plan Effective Date. Holders of Allowed Claims against more than one Debtor shall be treated as having a single Allowed Claim solely for purposes of any Distribution.

### B. Class Identification

The following table designates the Classes of Claims against and Interests in the Debtors and specifies which Classes are (i) Impaired and Unimpaired under the Plan, (ii) entitled to vote

10

to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (iii) presumed to accept or deemed to reject the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, and Priority Tax Claims have not been classified.

| Class | Applicable Debtor | Claimant | Impaired/ Unimpaired |
|---|---|---|---|
| Class 1 | All Debtors | Priority Claims | Unimpaired |
| Class 2 | All Debtors | Secured Tax Claims of Governmental Units | Unimpaired |
| Class 3 | All Debtors | Secured Claim of PNC | Impaired |
| Class 4 | TP Brands International Inc. | BMW Financial Services, NA, LLC | Unimpaired |
| Class 5 | All Debtors | Other Secured Claimants | Unimpaired |
| Class 6 | All Debtors | General Unsecured Claims | Impaired |
| Class 7 | All Debtors | Equity Interests | Unimpaired |

## C.    Treatment of Claims and Interests

The holders of the following Claims and Interests against the Debtors shall receive the treatment described below in full and final satisfaction of such Claim or Interest.

    1.    Class 1 – Priority Claims

    (a)    *Classification*: Class 1 is comprised of all Priority Claims against the Debtors.

    (b)    *Treatment*: Each holder of an Allowed Class 1 Claim shall receive from the Debtors, in the sole discretion of the Debtors in full satisfaction, settlement, release, and extinguishment of such Claim: (a) Cash equal to the amount of such Allowed Priority Claim as soon as practicable after the latest of (i) the Effective Date, (ii) the date that Priority Claim becomes Allowed, and (iii) a date agreed to by the Debtors and the holder of such Class 1 Claim; (b) such other treatment such that it will not be impaired pursuant to section 1124 of the Bankruptcy Code; or (c) such other less favorable treatment on such other terms and conditions as may be agreed upon in writing by the holder of such Priority Claim and the Debtors.

35584909-21

(c)     *Voting*: Class 1 is Unimpaired under the Plan, and the holders of Allowed Class 1 Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the holders of Allowed Claims in Class 1 are not entitled to vote to accept or reject the Plan.

2.    Class 2: Secured Tax Claims of Governmental Units

(a)     *Classification*: Class 2 is comprised of all Allowed Secured Tax Claims of Governmental Units.

(b)     *Treatment*: As soon as practicable after the Effective Date, the Debtors shall pay each holder of an Allowed Secured Tax Claim an amount, in Cash, equal to the Allowed Amount of its Secured Tax Claim in accordance with 11 U.S.C. § 1129(a).

(c)     *Voting*: Class 2 is Unimpaired under the Plan and the holders of Allowed Class 2 Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holders of Allowed Claims in Class 2 are not entitled to vote to accept or reject the Plan.

3.    Class 3: Secured Claim of PNC

(a)     *Classification*: Class 3 is comprised of the allowed secured claim of PNC Bank, National Association in the amount of $3,301,458.04 (comprised of $3,005,056.87 in principal, $277,466.91 in accrued pre-petition interest, and $18,934.26 in unreimbursed pre-petition attorneys' fees and cots), secured by a blanket lien on all assets of the Debtors (the "PNC Allowed Secured Claim").

(b)     *Treatment*: The PNC Allowed Secured Claim shall be allowed in the amount of $3,301,458.04.   The principal amount of the PNC Allowed Secured Claim ($3,005,056.87) shall accrue interest at the rate of prime plus two percent, variable monthly, with a cap of 8.75% per annum.  Beginning on the first day of the third full calendar month following the Effective Date and for fifty-nine months thereafter, the Debtors shall make monthly payments to PNC in the amount of $30,000.00 on account of the PNC Allowed Secured Claim which shall be applied first to currently accrued monthly interest then to principal.  Thereafter, in the 60th month, the Debtors shall make a balloon payment of all remaining principal, interest and fees due on the PNC Allowed Secured Claim.   In addition, the Debtors shall pay PNC all of the net proceeds of sales of inventory within two (2) business days of receipt of such sale proceeds by wire transfer or ACH payment which sums shall be applied to the principal due under the PNC Allowed Secured Claim.

35584909-21

The net proceeds to PNC from the sale of inventory shall be not less than $400,000, unless PNC and the Debtors agree in writing otherwise.  On or before thirty (30) days after the end of each year following the Effective Date, the Debtors shall pay to PNC fifty percent (50%) of the Debtors' Net Profit (after the annual payment to Holders of Allowed Unsecured Claims as set forth in the Plan) to be applied to the principal due under the PNC Allowed Secured Claim.  The Debtors shall maintain a single operating bank account at PNC (the "PNC Operating Account"), into which all the Debtors' revenues shall be deposited and from which all business expenses shall be paid (which shall be specifically ordered in the Confirmation Order).   HW, the licensee under the License Agreement, shall be required by the Confirmation Order to deposit by ACH all amounts due under the License Agreement into the PNC Operating Account.  PNC shall be entitled to reasonable reporting on a quarterly and annual basis.    There shall be no penalty for the prepayment of any portion of the PNC Allowed Secured Claim.

(c)    *Salaries*: The salaries of Ed Loiselle, Tom Winter, and Ashley Winter in the current annual amounts of $125,000.00, $250,000.00, and $40,000.00, respectively, shall be limited to a five percent (5%) annual increase beginning one year from the Effective Date until payment in full of the PNC Allowed Secured Claim.  Such salaries shall not be paid if there is a default in payments to PNC.

(d)    *Unimpaired Lien:*  PNC's lien on all assets of the Debtors shall remain unimpaired and continue to secure the PNC Allowed Secured Claim.

(e)    *Default Notice/Cure:*  The Debtors shall have ten days from written notice of default to cure such default.  Default notices shall be sent via email to: (1) the Debtors care of Winter at tom.winter@tpbrandsintl.com; (2) Winter at tom.winter@tpbrandsintl.com; (3) the Debtors' counsel Edward J. Peterson III at epeterson@bergersingerman.com; and (4) Winter's counsel Matt B. Hale at mhale@srbp.com.  If a payment default is not cured within 10 days of a default notice, then PNC may seek the entry of an expedited judgment against the Debtors and Winter as set forth in Article X below.

(f)    *Voting*: Class 3 is Impaired under the Plan and the holders of Allowed Class 3 Claims are entitled to vote to accept or reject the Plan.

13

4.      Class 4:  BMW Financial Services NA, LLC

(a)     *Classification*: Class 4 is comprised of the claim of BMW Financial Services NA, LLC in the amount of $38,456.66 secured by a lien on a 2025 BMW X7 M60i.

(b)     *Treatment*: BMW Financial Services NA, LLC's claim shall be allowed as filed and paid in accordance with the prepetition loan documents.  There are no prepetition arrearages owed to BMW Financial Services NA, LLC.

(b)     *Voting*: Class 4 is Unimpaired under the Plan and the holders of Allowed Class 4 Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the holders of Allowed Claims in Class 4 are not entitled to vote to accept or reject the Plan.

5.      Class 5: Other Secured Claims

(a)     *Classification*: Class 5 is comprised of the Allowed Other Secured Claims.

(b)     *Treatment*:  Except to the extent that a holder of an Allowed Other Secured Claim against any of the Debtors has agreed to less favorable treatment of such Claim, each such holder of an Allowed Other Secured Claim shall receive, at the option of the Debtors, in full and final satisfaction of such Allowed Other Secured Claim, (i) payment in full in Cash, payable on the later of the Effective Date and the first Business Day after thirty (30) calendar days from the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, or as soon as reasonably practical thereafter, (ii) delivery of the collateral securing such Allowed Other Secured Claim, or (iii) such other treatment necessary to satisfy section 1129 of the Bankruptcy Code.

(c)     *Voting*: Class 5 is Unimpaired, and the holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holders of Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to the Other Secured Claims.

35584909-21

6.      Class 6: General Unsecured Claims

(a)     *Classification*: Class 6 is comprised of all General Unsecured Claims against the Debtors not otherwise classified under the Plan.

(b)     *Treatment*: Each holder of an Allowed Unsecured Claim in Class 6 shall receive their pro rata share of the Unsecured Annual Payments. The first of the Unsecured Annual Payments shall be made on or before thirty (30) days after the end of each year following the Effective Date. The Holders of Allowed Unsecured Claims will receive their pro rata share of $200,000.00 (the total of all Unsecured Annual Payments), to be paid in the aggregate over five years. This equates to an estimated distribution to Allowed Unsecured Claims of approximately 1.89%.[2]

(c)     *Voting*: Class 6 is Impaired under the Plan and the holders of Allowed Claims in Class 6 are entitled to vote to accept or reject the Plan.

7.      Class 7:  Equity Interests

(a)     *Classification:* Class 7 is comprised of all Equity Interests.

(b)     *Treatment:* Equity Holders shall retain their Interests in the Reorganized Debtors.

(b)     *Voting:* Class 7 is Unimpaired under the Plan and the holders of Allowed Class 7 claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the holders of Allowed Claims in Class 7 are not entitled to vote to accept or reject the Plan.

**D.      Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code**

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims entitled to vote against the Debtors. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article XII(c) of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

**E.      Subordinated Claims**

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective treatment thereof under the Plan take

---

[2] This is based upon assumed allowed general unsecured claims totaling $10,550,631.01. This number does not include intercompany claims by a Debtor against another Debtor.

35584909-21

into account the relative priority of the Claims in each Class, whether arising under a contract, principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to reclassify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### F.    Elimination of Vacant Classes

Any Class that does not have a Claim or Interest in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for all purposes.

### ARTICLE IV- MEANS OF IMPLEMENTING PLAN AND LIQUIDATION ANALYSIS

**4.1**    On the Effective Date of the Plan, all of the Debtors' Property, including, but not limited to, any and all causes of action filed either pre-petition or post-petition shall vest in and be retained by the Reorganized Debtors under their sole and exclusive control pursuant to and in accordance with the terms of Section 1123(b)(3)(B) of the Bankruptcy Code or otherwise.

The Debtors will fund the Plan with income from operations.  Attached to the Disclosure Statement as **Exhibit A** is a chart showing the financial performance of the Debtors since the state of the Chapter 11 Cases.  Attached to the Disclosure Statement as **Exhibit C** are Projections showing the anticipated performance of the Debtors after the Plan is confirmed.

TP Brands International Inc. operates under the License Agreement with HW pursuant to which HW has an exclusive license to use certain intellectual property of the Debtors for the marketing and sale of certain products.  The Debtors entered into this agreement to ensure a revenue stream to fund a reorganization.  Under the License Agreement, TP Brands International is incentivized to grow its business and HW pays royalties and fees based on sales growth.  The License Agreement allowed the Debtors to shift their business from a capital-intensive warehousing and distribution model to a licensing and sales model.  Under the License Agreement, TP Brands International repositioned itself into being a manufacturer's representative focusing on sales and growing the business and HW handles the purchasing and housing of inventory.  This allowed the Debtors to preserve its relationships with its largest customers which are now being serviced by HW.  TP Brands International employs salespeople to sell product which is then purchased by HW.

As shown in the Projections, the Debtors anticipate that cash flow under the License Agreement will steadily increase over time and will be sufficient to fund the distributions anticipated by the Plan.

**THE VESTING AND RETENTION BY THE REORGANIZED DEBTORS OF THE PROPERTY HEREUNDER SHALL BE FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS OF ANY KIND WHATSOEVER, EXCEPT AS EXPRESSLY PRESERVED AND PROVIDED FOR IN THE PLAN AND THE CONFIRMATION ORDER.**

35584909-21

**4.2** To confirm this Plan, the Court must find that all creditors and Interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. Attached to the Disclosure Statement is a liquidation analysis which shows that creditors will receive at least as much under the Plan as they would receive in a chapter 7 liquidation. Accordingly, the treatment proposed under the Amended Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

## ARTICLE V - DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS

All references to Claims and amounts of Claims are to the amount of the Claim Allowed by operation of law, Final Order of the Bankruptcy Court or this Plan or as otherwise agreed to by the holder of the Claim and the Debtors. Accordingly, notwithstanding any other provision in this Plan, no payment or distribution shall be made on account of or with respect to any Claim to the extent it is a Disputed Claim, unless and until the Disputed Claim becomes an Allowed Claim, whether or not such Claim is disputed in part only.

The Debtors shall file and serve any additional objections to Claims on or before 60 days after the Effective Date of the Plan, or as may be extended by the Bankruptcy Court.

To expedite distributions pursuant to the Plan and avoid undue delay in the administration of the Chapter 11 Cases, on request of the Debtors, the Bankruptcy Court may estimate, pursuant to section 502(c) of the Bankruptcy Code, the amount of any Disputed Claim.

If there shall exist as of the Effective Date any Disputed Claims in any Class, the Debtors or Reorganized Debtors as applicable shall reserve an amount equal to the pro rata portion of such distribution to which such Disputed Claim would be entitled if it had been Allowed in the amount asserted by the holder of such Disputed Claim. To the extent that any such Disputed Claim becomes an Allowed Claim the reserved cash shall be distributed to the holder of the Allowed Claim in a manner and amount consistent with the treatment of Allowed Claims in that class, with any surplus cash becoming generally available for use by the Debtors in accordance with the terms of this Plan,

If the Disputed, Contingent or Unliquidated Claim is allowed, and the Order allowing the Claim is no longer subject to appeal, then the Claim shall be paid pursuant to the terms of the Plan applicable to the class within which the Claim belongs.

## ARTICLE VI - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except for those executory contracts and unexpired leases (a) that are listed on **Exhibit A** or may be filed separately pursuant to an assumed contracts and leases schedule, (b) that are the subject of previous orders of the Bankruptcy Court providing for their assumption or rejection, or (c) that are the subject of a pending motion with respect to the assumption or assumption and assignment of such executory contracts and unexpired leases, as of the Confirmation Date, all executory contracts and unexpired leases of the Debtors shall be rejected pursuant to section 365 of the Bankruptcy Code.

17

35584909-21

Any monetary defaults under each executory contract and unexpired lease to be assumed under this Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, in either of the following ways: (a) by payment of the default amount in Cash, in full on or before ninety (90) days after the Effective Date or (b) by payment of the default amount on such other terms as may be agreed to by the Debtors and the non-debtor parties to such executory contract or lease.  If there is a dispute regarding (i) the amount or timing of any cure payments, (ii) the ability of the Debtors, or an assignee thereof to provide adequate assurance of future performance under the contract or lease to be assumed or assumed and assigned, as applicable, or (iii) any other matter pertaining to assumption or assumption and assignment of the contract or lease to be assumed, the Debtors shall pay all required cure amounts promptly following the entry of a Final Order resolving the dispute.

If any assumption of an executory contract or unexpired lease proposed for any reason is not approved by the Bankruptcy Court, then the Debtors shall be entitled, in their sole discretion, upon written notice to the applicable non-debtor party to such executory contract or unexpired lease, to deem such executory contract or unexpired lease to have been rejected.

The Confirmation Order shall constitute an Order of the Bankruptcy Court approving all rejections of executory contracts and unexpired leases not previously assumed or rejected pursuant to section 365 of the Bankruptcy Code, as of the Confirmation Date. Any Claim for damages arising from any such rejection must be filed within 30 days after the date of the entry of the Confirmation Order or such Claim shall be forever barred, shall not be enforceable against the Debtors, its Estate, the Reorganized Debtors or any of their respective properties and shall receive no distribution under this Plan or otherwise on account of such Claim. Any rejection claim will be treated as a general unsecured claim pursuant to the applicable class in the applicable Debtor's case.

### ARTICLE VII - DISTRIBUTIONS

All full or partial payments made and received by the holder of a Claim before the Effective Date shall be deemed to be payments under this Plan for purposes of satisfying the obligations of the Debtors pursuant to this Plan. Except as otherwise provided in the Plan, Distributions to any holder of an Allowed Claim shall be allocated first to the principal portion of any such Allowed Claim, and, only after the principal portion of any such Allowed Claim is satisfied in full, to any portion of such Allowed Claim comprising interest (but solely to the extent that interest is an allowable portion of such Allowed Claim pursuant to this Plan or otherwise).  All payments shall be made in accordance with the priorities established in the Bankruptcy Code unless otherwise provided in this Plan or agreed to with the payee.

Distributions to holders of Allowed Claims shall be made: (a) at the addresses set forth in the proofs of Claim; (b) at the addresses set forth in any written notices of address change delivered to the Debtors after the date on which any related proof of Claim was filed; or (c) at the addresses reflected in the Schedules relating to the applicable Allowed Claim if no proof of Claim has been filed and the Debtors has not received a written notice of a change of address.

Cash payments to be made pursuant to this Plan shall be made by checks drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Debtors. No payment

18

35584909-21

in an amount of less than $1.00 shall be made on account of any Allowed Claim, except for final distributions.

Unless otherwise specifically provided for in this Plan, the Confirmation Order, a Final Order of the Bankruptcy Court or required by applicable bankruptcy law, Post-Petition interest shall not accrue or be paid, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. The sole exception shall be secured claims. Interest shall not accrue or be paid on any Disputed Claim for the period from the Petition Date to the date a Final Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

Unless otherwise expressly set forth herein with respect to a specific Claim or Class of Claims, for the purpose of the provisions of this Plan, the "Face Amount" of a Disputed Claim means the amount set forth on the proof of Claim unless the Disputed Claim has been estimated for distribution purposes or, in the alternative, if no proof of Claim has been timely filed or deemed filed, $0.

If a good faith dispute arises as to the identity of a holder of an Allowed Claim that is to receive any distribution, in lieu of making such distribution to such holder, the Debtors may instead make a distribution (or any amount estimated pursuant to section 502(c) of the Bankruptcy Code) into a segregated account until the disposition thereof shall be determined by Final Order of the Bankruptcy Court or by written agreement among the interested parties to such dispute.

Unless otherwise provided in this Plan or the Confirmation Order, the distributions and rights provided under this Plan are in complete satisfaction and release, effective as of the Effective Date, of all Claims against and Interests in the Debtors' Estates and all liens upon any Property of the Estates. The holders of liens satisfied and released under this Plan shall execute and deliver, or cause to be executed and delivered, any and all documentation reasonably requested by the Debtors or the Reorganized Debtors evidencing the satisfaction, discharge and release of such liens. Whether or not such documentation is executed and delivered, all of the assets of each Debtors' Estate shall be deemed free and clear of any such liens, claims and encumbrances on or after the Final Distribution Date.

In connection with this Plan and the distributions made in accordance thereto, to the extent applicable, the Debtors shall comply with all tax withholding and reporting requirements imposed on him by any governmental unit and all distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Debtors shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

If any payment or act under this Plan or under any contracts, instruments or other documents delivered pursuant to, related to, or implementing this Plan, including those documents attached as exhibits to this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

Checks issued in respect of distributions under the Plan will be null and void if not negotiated within 60 days after the date of issuance. Any funds returned to the Debtors or the Reorganized Debtors by reason of non-negotiated checks will be held by the Reorganized Debtors

35584909-21

until such time as they qualify for unclaimed property or if earlier, a request for reissuance is received by the Debtors. Any unclaimed property shall be revested with the Reorganized Debtors if unclaimed pursuant to this Plan. Requests for reissuance of any such check will be made, in writing, directly to the Debtors by the holder of the Allowed Claim or Interest with respect to which the check originally was issued. All Claims or Interests for which void checks were issued, as well as the underlying distributions, will be forever barred, as against the Debtors, their Estates and assets.

In connection with the Plan and the distributions made in accordance thereto, to the extent applicable, the Debtors will comply with all tax withholding and reporting requirements imposed on them by any governmental unit and all distributions pursuant to the Plan will be subject to such withholding and reporting requirements. The Debtors will be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

## ARTICLE VIII - PRESERVATION OF CAUSES OF ACTION AND POST-CONFIRMATION LITIGATION

The Debtors and/or the Reorganized Debtors shall retain all Causes of Action Post-Confirmation. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtors to describe such Cause of Action with specificity in the Plan or in the Disclosure Statement; nor shall the Reorganized Debtors, as a result of such failure, be estopped or precluded under any theory from pursuing any such Cause of Action. Nothing in the Plan operates as a release of any Cause of Action.

The Debtors or Reorganized Debtors, as applicable, (a) may commence or continue in any appropriate court, tribunal or any other appropriate setting (e.g., American Arbitration Association or other arbitration association) any suit or other proceeding for the enforcement of any Cause of Action which the Debtors had or had power to assert immediately prior to the Effective Date, and (b) may settle or adjust such Cause of Action; provided, however, that from and after the Effective Date, the Reorganized Debtors shall be authorized to compromise and settle any Cause of Action or objection to a Claim upon approval by the Bankruptcy Court after notice and a hearing, excluding ordinary course of business settlements consistent with the Debtors' practices, which shall not require Bankruptcy Court approval.

The Debtors and/or the Reorganized Debtors shall have the authority to file, settle, compromise, withdraw, arbitrate, or litigate to judgment objections to Claims and Interests. Except with respect to Claims for rejection damages, objections to Claims must be filed by the deadline fixed by the Court.

An Objection to the allowance of a Claim or Interest will be in writing and may be filed by the Debtors, Reorganized Debtors, or other interested parties at any time on or before the deadline fixed by the Court. The Debtors' failure to object to any Claim or Interest for voting purposes will not be deemed a waiver of its right to object to, or re-examine, any such Claim in whole or in part.

The Debtors or Reorganized Debtors may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtors may have against the holder of such

20

Claims; but neither the failure to do so nor the Allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim that the Debtors may have against such holder.

Except as otherwise provided in this Plan, nothing shall affect the Debtors' rights and legal and equitable defenses with respect to any Unimpaired Claim or Unimpaired Interest, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims and Unimpaired Interests.

### ARTICLE IX – EXPEDITED JUDGMENT PROCESS
### REGARDING PNC ALLOWED SECURED CLAIM

Promptly after the Effective Date, PNC, the Debtors, and Winter shall jointly dismiss the District Court Action without prejudice with the parties to bear their own attorney's fees and costs.

If the Debtors default in making any required payment to PNC under the Plan on account of the PNC Allowed Secured Claim and such payment default is not cured within ten (10) days after written notice of the default to the Debtors and Winter sent via email to: (1) the Debtors care of Winter at tom.winter@tpbrandsintl.com; (2) Winter at tom.winter@tpbrandsintl.com; (3) the Debtors' counsel Edward J. Peterson III at epeterson@bergersingerman.com; and (4) Winter's counsel Matt B. Hale at mhale@srbp.com, then, following the expiration of the cure period above, all amounts due on the PNC Allowed Secured Claim shall be accelerated and become immediately due and payable without further notice and PNC shall be entitled to the entry on an expedited basis of a final judgment by the Bankruptcy Court in its favor against the Debtors and Winter for the full remaining balance of the PNC Allowed Secured Claim upon the filing of a motion for expedited judgment and a supporting affidavit(s) establishing the payment default, certifying the required email notification pursuant to this provision, and detailing the remaining amounts due on the PNC Allowed Secured Claim (which motion and supporting affidavit shall be served on the Debtors' Counsel Edward J. Peterson III, Winter's counsel Matt B. Hale and via email to the Debtors and Winter at the email addresses set forth above). The only defenses that may be raised by the Debtors or Winter to entry of a judgment in PNC's favor pursuant to this provision is payment or a dispute regarding the calculation of the then outstanding amounts due on the PNC Allowed Secured Claim.

The Bankruptcy Court shall retain jurisdiction to enforce this provision and enter an expedited judgment against the Debtors and Winter in favor of PNC. If the Debtors' bankruptcy cases are closed at the time PNC seeks to exercise its rights under this provision, the Bankruptcy Court will reopen the Debtors' bankruptcy cases upon the filing of a motion to reopen the cases so that it may exercise its jurisdiction, enforce this provision and enter an expedited judgment.

### ARTICLE X – PROVISIONS REGARDING WINTER

The Guaranty Agreements executed by Winter in favor of PNC shall remain in full force and effect; provided, however, the Guaranty Agreements shall apply to guarantee the Debtors' obligations to PNC as modified by the Plan. Additionally, as long as the Debtors are not in default on payments to PNC under the Plan (subject to the right to cure within ten (10) days of email

21

35584909-21

notification as set forth above), PNC shall not pursue any collection efforts against Winter on the Guaranty Agreements.

Winter shall execute a noncompete agreement in favor of the Debtors and PNC in form and substance satisfactory to the Debtors, Winter, and PNC which shall be filed with the Bankruptcy Court as a plan supplement prior to the Confirmation Hearing on the Plan.

## ARTICLE XI – EXCULPATION AND INJUNCTIONS

**9.1** *Exculpation from Liability.* **The Debtors and their officers, directors, members, managers, employees, and Professionals (acting in such capacity) (collectively, the "Exculpated Parties") shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Chapter 11 Cases, for the period on and after the Petition Date and through the Effective Date; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party or breach of any contract or any fiduciary duty. With respect to Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Chapter 11 Cases. Any such claims shall be governed by the standard of care otherwise applicable to the standard of negligence claims outside of bankruptcy. The rights granted under this Article XI are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Exculpated Parties have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law. In furtherance of the foregoing, the Exculpated Parties shall have the fullest protection afforded under Section 1125(e) of the Bankruptcy Code and all applicable law from liability for violation of any applicable law, rule or regulation governing the solicitation of acceptance or rejection of a plan. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation.**

**9.2** *General Injunction.* **Pursuant to Sections 105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold or may hold a Claim, debt, or other liability shall be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such Claims, debts, or other liabilities, other than actions brought to enforce any rights or obligations under the Plan; (a) commencing or continuing in any manner any action or other proceeding against the Debtors, their assets or their Estates; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors, their assets or their Estates; (c) creating, perfecting or enforcing any Lien or encumbrance against Debtors, their assets or their Estates; (d) commencing or continuing, in any manner or in any place, any action that does**

22

not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; or (e) interfering with or in any manner whatsoever disturbing the rights and remedies of the Debtors or the Reorganized Debtors as applicable or their Estates under the Plan and the documents executed in connection therewith. The Debtors or the Reorganized Debtors as applicable shall have the right to independently seek enforcement of this general injunction provision. This general injunction provision is an integral part of the Plan and is essential to its implementation.

**9.3** *Matching Injunction.* Provided that neither the Debtors and/or the Reorganized Debtors are in default under their payments to PNC due under Article III(C)(3) of this Plan, PNC shall be enjoined and barred from taking any of the following actions with respect to Winter: (a) commencing or continuing in any manner any action or other proceeding against Winter, (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or other order against Winter, (c) creating, perfecting, or enforcing any lien or encumbrance against Winter, (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability, or obligation due to Winter, (e) commencing or continuing in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan or the Confirmation Order, or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of Winter. The injunction shall dissolve in the event that the Debtors and/or the Reorganized Debtors default on the payments set forth in this Plan and after written notice and opportunity to cure, such default has not been cured as provided by this Plan by the Debtors, the Reorganized Debtors, and/or Winter. The Debtors, the Reorganized Debtors, and Winter shall have the right to independently seek enforcement of this injunction provision. This injunction provision is an integral part of these Chapter 11 Cases and is integral to this Plan and is essential to its implementation.

## ARTICLE XII – MISCELLANEOUS PROVISIONS

a. The Debtors shall continue to pay all fees pursuant to 28 U.S.C. § 1930 to the extent required by law.

b. The provisions of this Plan shall be binding upon and inure to the benefit of the Debtors, Creditors, holders of Interests, and their respective predecessors, successors, assigns, agents, officers, and directors.

c. This Plan may be amended or modified by the Debtors before or after the Confirmation Date as provided in section 1127 of the Bankruptcy Code. On or before substantial consummation of this Plan, the Debtors may issue, execute, deliver, and file with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of this Plan or any Plan Document, including by making such supplemental disclosures or notices as the Debtors deems useful. The Plan Debtors may, with the approval of the Bankruptcy Court and without notice to Holders of Claims and Interests, correct any nonmaterial defect, omission, or inconsistency herein in such manner and to such extent as may be necessary or desirable.

35584909-21

d.  Except as mandated by the Bankruptcy Code or Bankruptcy Rules as applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Florida, without giving effect to principles of conflicts of law.

e.  The Debtors reserve the right to revoke and withdraw this Plan prior to its Confirmation. If the Debtors revokes or withdraws this Plan, then this Plan shall be deemed null and void and nothing contained herein shall be deemed to prejudice in any manner the rights of the Debtors in any further proceedings.

f.  Except for the payments due on the PNC Allowed Secured Claims, the Debtors shall have a thirty (30) day cure/grace period for all payments provided for under this Plan.  The Debtors may prepay any obligation in this Plan without Penalty.

g.  From and after the Effective Date, the Reorganized Debtors have the authority to amend, modify, or supplement the Plan, the Exhibits to the Plan and any documents attached to such Plan and Exhibits to the Plan shall be as provided in such Plan and Exhibits to the Plan and their respective attachments.

h.  If any provision of this Plan is inconsistent with a provision of the Disclosure Statement or any other agreement or instrument required or to be executed by any Entity pursuant to this Plan, the provision of this Plan shall control and take precedence.

i.  Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of any security or the making or delivery of any instrument of transfer under this Plan may not be taxed under any law imposing a stamp tax, use tax, sales tax, or similar tax.

j.  No Claim or Interest shall under any circumstances be entitled to specific performance or other injunctive, equitable, or other prospective relief.

k.  Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed to be an admission by the Debtors with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of any classification of any Claim or Interest.

l.  Unless otherwise specified herein, in computing any period of time prescribed or allowed by this Plan, the day of the act or event from which the designated period begins to run shall not be included.  The last day of the period so computed shall be included, unless it is not a Business Day, in which event the period runs until the end of the next succeeding day, which is a Business Day. Otherwise, the provisions of Rule 9006 shall apply.

m.  No attorneys' fees will be paid with respect to any Claim or Interest, except as expressly specified herein or allowed by a Final Order of the Bankruptcy Court.

24

35584909-21

n.  To the extent that such a reservation of jurisdiction is necessary or effective, the Debtors hereby expressly provides that notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain after the Effective Date exclusive jurisdiction of all matters arising out of, arising in or related to, the Chapter 11 Case to the fullest extent permitted by applicable law.

o.  Except as otherwise provided in the Plan, any notice required or permitted to be provided under this Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, freight prepaid, to be addressed as follows:

| To the Debtors: | With a copy to: |
|---|---|
| Thomas J. Winter, President<br>TP Brands Worldwide Inc., *et al.*<br>2021 51st Avenue East, Unit 109<br>Palmetto, FL 34221<br>tom.winter@tpbrandsintl.com | Edward J. Peterson, Esq.<br>Berger Singerman LLP<br>101 E. Kennedy Boulevard, Suite 1165<br>Tampa, Florida 33602<br>epeterson@bergersingerman.com |

p.  The rights, benefits and obligations of any person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such person or Entity.

## ARTICLE XIII – EFFECTIVE DATE

The Effective Date of the Plan shall be the fifteenth (15) day following entry of the Confirmation Order.

## ARTICLE XIV – CONFIRMATION REQUEST

To the extent necessary, the Debtors requests that the Bankruptcy Court confirm this Plan under the cramdown provisions of section 1129(b) of the Bankruptcy Code, if necessary, on the basis that this Plan is fair and equitable, is proposed in good faith, and does not discriminate unfairly, with respect to each Class of Claims or Interests that is Impaired under, and has not accepted, this Plan.

If all of the applicable requirements of section 1129(a) of the Bankruptcy Code, other than subparagraph (8) are determined by the Bankruptcy Court to have been satisfied, the Debtors will then seek Confirmation pursuant to section 1129(b) of the Bankruptcy Code at the originally scheduled Confirmation Hearing. For purposes of seeking confirmation under the cramdown provisions of the Bankruptcy Code, if necessary, the Debtors reserve the right at, or after the original Confirmation Hearing, to modify or vary the terms of the treatment of Claims of the rejecting Classes, so as to comply with the requirements of section.   This section shall constitute the Plan Debtors' request, if necessary, pursuant to Section 1129(b)(1) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of

35584909-21

Section 1129(a)(8) of the Bankruptcy Code may not be met, or to seek reclassification of Claims or Classes of Claims pursuant to section 1122.

Dated: March 13, 2026.                    Respectfully submitted,

                                          TP Brands Worldwide Inc.
                                          TP Brands International Inc.
                                          Premfloor, Inc.

                                          By:  /s/ *Thomas J. Winter*
                                                 Thomas J. Winter, President


                                          BERGER SINGERMAN LLP
                                          *Counsel for the Debtors and Debtors-in-Possession*
                                          101 E. Kennedy Boulevard, Suite 1165
                                          Tampa, FL 33602
                                          Tel. (813) 498-3400
                                          Fax (813) 527-3705

                                          By:  */s/ Edward J. Peterson*
                                                 Edward J. Peterson
                                                 Florida Bar No. 0014612
                                                 epeterson@bergersingerman.com
                                                 Clay B. Roberts
                                                 Florida Bar No. 116058
                                                 croberts@bergersingerman.com

                                          *Filer's Attestation: Pursuant to Local Rule 1001-2(g)(3) regarding signatures, Edward J. Peterson attests that concurrence in the filing of this paper has been obtained.*

35584909-21

## <u>Exhibit A</u>

### Assumed Contracts and Leases

- All executory contracts and unexpired leases previously assumed and approved by the Court and not subsequently rejected
- All insurance contracts
- The License Agreement

35584909-21